UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE M. KUHARSKI, | No. 2:12-cv-01055-AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court grants plaintiff's motion for summary judgment, denies defendant's motion for summary judgment, and remands the matter for further proceedings.

I.   BACKGROUND

Plaintiff filed an application for SSI on August 26, 2009, alleging disability beginning July 13, 2009. Administrative Record ("AR") 144-51. Plaintiff's application was initially denied on February 11, 2010, and again upon reconsideration on September 9, 2010. AR 87-92, 96-100. On September 7, 2011, a hearing was held before administrative law judge ("ALJ") Carol A.

Eckerson. AR 10-19. Plaintiff appeared with an attorney representative at the hearing, at which plaintiff and a vocational expert ("VE") testified. AR 31-82. In a decision dated November 18, 2011, the ALJ determined that plaintiff was not disabled under 1614(a)(3)(A) of the Act.[1] AR 10-19. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since August 26, 2009, the application date.
>
> 2. The claimant has the following severe impairments: status-post gunshot wound to the neck and flank; seizure disorder; psychosis; mood disorder; borderline intellectual functioning; and poly-substance abuse, in remission.
>
> 3. The claimant does not have an impairment or combination of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is precluded from climbing ladders, ropes and scaffolds; he can occasionally climb ramps and stairs; he can occasionally reach overhead with the right dominant upper extremity; he should avoid concentrated exposure to hazards; and he is limited to simple repetitive tasks.

5. The claimant is capable of performing past relevant work as a production assembler. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since August 26, 2009, the date the application was filed.

AR 12-19.

Plaintiff requested the Appeals Council review the ALJ's decision. AR 1-4. However, on February 17, 2012, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1.

## II.     LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

1  (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

III.   ANALYSIS

Plaintiff argues that the ALJ erred by (1) failing to consider plaintiff's post-traumatic stress disorder ("PTSD") as a severe impairment, (2) failing to credit plaintiff's statements and mischaracterizing the record, and (3) failing to credit the VE's testimony that plaintiff could not work if he missed more than one day of work per month.

A. The ALJ did not err by failing to find at step two that plaintiff's PTSD was severe

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to find that plaintiff's diagnosis of PTSD was a severe impairment.  "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Yuckert, 482 U.S. at 153.  At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p (1996)).  The step-two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work.  Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). In this case the ALJ found that several of plaintiff's impairments, not including PTSD, were severe.

Treatment notes completed by plaintiff's treating physician, Dr. Koike, show that plaintiff was diagnosed with PTSD and Mood Disorder Not Otherwise Specified.  AR 562, 566-67, 569, 571, 572, 575, 582.  While the ALJ found at the second step of the sequential evaluation process that plaintiff's seizure disorder, psychosis and mood disorder were all severe impairments, the

4

ALJ's decision did not specifically mention Dr. Koike's diagnosis of PTSD. However, since the ALJ found that plaintiff had at least one severe impairment, plaintiff was not prejudiced by any arguable second step error. See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) ("Assuming without deciding that [the] omission [of an impairment] constituted legal error, it could only have prejudiced Burch in step three . . . or step five . . . because the other steps, including this one, were resolved in her favor.").

Plaintiff contends, however, that the ALJ's failure to find that his PTSD was a severe impairment at step-two "infects the findings at steps three and four because no consideration is given concerning the effect of this particular impairment . . . ." Pl.'s Mot. Summ. J. ("P's MSJ") 11.[2] If an ALJ finds that a plaintiff has a severe impairment, all impairments, including non-severe impairments, must be considered in the remaining steps of the sequential analysis. See Smolen, 80 F.3d at 1290. Dr. Koike was the only physician to diagnosis plaintiff with PTSD. Although the record establishes the fact of this diagnosis, there is no evidence that plaintiff's PTSD, as distinct from his other impairments, limited plaintiff's ability to perform work-related activities. With no evidence showing that plaintiff's PTSD limited his ability to work, the court cannot find that the ALJ erred by not explicitly considering this diagnosis at subsequent steps of the sequential evaluation process. If plaintiff believed that his PTSD had an impact on his ability to work, it was his burden to produce evidence supporting his claim. See Burch, 400 F.3d at 679 ("The claimant carries the initial burden of proving steps one through four of the analysis.").

B.  The ALJ erred in rejecting plaintiff's testimony regarding the severity of mental health symptoms

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for discrediting his testimony regarding the severity off his mental health symptoms and their impact on his functioning. P's MSJ at 14. Plaintiff testified that he experiences chronic anxiety and paranoia that restrict him to his bedroom for most of each day, and that he suffers from panic attacks that cause him to "black out." AR 47, 51-53. He testified that he had not left his home

---

[2]  Citations to court documents refer to the page numbers assigned by the court's electronic docketing system and not those assigned by the parties.

1  alone in over two years, is not left alone in the home with his children, and requires the assistance
2  of his common-law wife to perform the activities of daily living.  AR 77, 62-64.  He also testified
3  about continuing physical pain from his old gunshot injury.
4        In evaluating whether subjective complaints are credible, the ALJ should first consider
5  objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,
6  344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of impairment, the ALJ then
7  may consider the nature of the symptoms alleged, including aggravating factors, medication,
8  treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the
9  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent
10 testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a
11 prescribed course of treatment, and (3) the applicant's daily activities.  Smolen, 80 F.3d at 1284.
12 Plaintiff's testimony may be rejected if it is not believed to be true, but there must be "specific
13 findings justifying that decision."  Summers v. Bowen, 813 F.2d 241, 242 (9th Cir. 1987) (citing
14 Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986)).  Work records, physician and third party
15 testimony about nature, severity and effect of symptoms, and inconsistencies between testimony
16 and conduct also may be relevant.  Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).
17 "Without affirmative evidence showing that the claimant is malingering, the Commissioner's
18 reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan, 169 F.3d
19 at 599.
20       At least some of the ALJ's reasons for rejecting plaintiff's testimony were inadequately
21 supported.  First, the ALJ found that plaintiff's activities of daily living were inconsistent with his
22 testimony.  Conflicts between a plaintiff's daily activity and his testimony may constitute clear
23 and convincing reasons for rejecting the testimony.  See Morgan, 169 F.3d at 599-600; see also
24 Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (ALJ discredited claimant's testimony
25 when it was undermined by reported daily activities including computer work, pet care, cooking,
26 laundry, and other household chores); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)
27 (claimant's testimony undermined when daily activities included taking care of two children,
28 cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every

1  week). The record before the ALJ, however, does not support her findings that plaintiff's daily

2  activity and interactions were "somewhat normal" and contradicted his testimony. AR 15.

3  The ALJ stated that plaintiff's "every day activities" included going out, shopping, doing

4  household chores, paying bills, cooking, and caring for his infant child. AR 15. However, the

5  record does not support a finding that any of these activities were performed on a more than

6  occasional basis except to a very limited degree. See AR 56-57, 62-64, 69-70, 188-95, 208-15,

7  496.[3] The only "childcare" activity that plaintiff reported performing on a daily basis was turning

8  on the television for the children in the morning and then going back to bed. AR 496. The other

9  household tasks that plaintiff performed as part of a typical day were similarly limited. See id.

10  Plaintiff's prior reports were consistent with his testimony that his daily activities were minimal

11  and that he rarely or never left the house without assistance. That plaintiff sometimes changed a

12  diaper or mowed the lawn, AR 208-210, is not inconsistent with his testimony regarding the

13  severity and impact of his anxiety symptoms.

14      The ALJ also discounted plaintiff's credibility because his treatment was conservative

15  overall. AR 15. Evidence of "conservative treatment" is sufficient to discount a claimant's

16  testimony regarding severity of impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)

17  (quoting Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)). The ALJ specifically found

18  that plaintiff's treatment was conservative "with the exception of the surgical interventions

19  immediately following the gunshot wounds." AR 15. The record, however, is devoid of any

20  medical opinion that plaintiff's regimen of anti-seizure, anti-psychotic and anti-anxiety drugs

21  constitutes a "conservative" course of pharmaceutical treatment. In Parra, the Ninth Circuit

22  affirmed the ALJ's adverse credibility finding on grounds that plaintiff's conservative treatment

23  was inconsistent with his testimony about pain. In that case the plaintiff had received only over-

24  the-counter medication. This is not such a case.

25      The ALJ appears to have deemed treatment "conservative" because plaintiff had not been

26

27  [3] The function reports completed by plaintiff and by his wife identify many activities that may be characterized qualitatively as "daily activities," but the actual frequency with which plaintiff

28  performed such chores is not specified. AR 188-95, 209-15.

psychiatrically hospitalized and because his symptoms were controlled and stabilized by medication.  See AR 15.  The fact that plaintiff had not been hospitalized for a psychiatric crisis does not mean that his treatment was "conservative" or that he could function in a normal working environment.  Moreover, the records of plaintiff's treating psychiatrist consistently reflect that plaintiff's response to medication was "partial/inadequate" rather than stabilized.  AR 564, 567, 569, 571, 572, 574, 575.  The treating psychiatrist considered plaintiff's response to medication to be inadequate overall even when noting improvements in plaintiff's affect and presentation.  E.g., AR 564. 567.[4]  For these reasons, plaintiff's outpatient treatment history does not support an adverse credibility finding or otherwise conflict with his self-reports of functional impairment.

### C. The ALJ erred by failing to include the mental functioning impairments identified by Dr. Finkel in the hypothetical questions posed to the Vocational Expert

Plaintiff contends that the ALJ erred by not crediting  the Vocational Expert ("VE") testimony that an individual with plaintiff's Residual Functional Capacity ("RFC") could not work as production assembler if his or her impairments caused him or her to miss more than one or two days of work in a month.  P's MSJ.  The ALJ did not "fail to credit" this testimony, she failed to determine whether plaintiff (or a hypothetical person with plaintiff's limitations) has the ability to meet the attendance requirements specified by the VE.  The real issue here is the formulation of the RFC, and the adequacy of the hypothetical question the ALJ posed to the VE on the basis of the RFC.

In order for the testimony of a VE to be reliable, the hypothetical posed must include "all of the claimant's functional limitations, both physical and mental" that are supported by the record.  Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995).  In this case, the examining psychologist (Barry N. Finkel, Ph.D.) found in relevant part as follows, on the basis of his examination and psychological testing:

---

[4] Mental illnesses including psychotic disorders and mood disorders typically wax and wane in the severity of symptoms, so ALJs should not rely on discrete periods of improvement to reject mental function limitations.  See Punzio v. Astrue, 630 F.3d 704, 710 (9th Cir. 2011).

> The patient . . . can follow simple instructions. He should be able to attend to and follow through on simple tasks without direct supervision. Attention, concentration, and pace are all in the moderately impaired range. Interaction with others such as supervisors and peers is likely to be mildly impaired. From a psychiatric standpoint, his ability to work over an eight-hour day and attend to a regular work schedule is considered moderately impaired.

AR 499. Dr. Finkel's report did not define moderate impairment in functional terms, or provide an opinion regarding the work schedule that plaintiff could be expected to sustain in light of his psychiatric impairments. Dr. Finkel provided the only opinion evidence regarding plaintiff's mental functioning.

Regarding plaintiff's RFC, the ALJ found as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is precluded from climbing ladders, ropes and scaffolds; he can occasionally climb ramps and stairs; he can occasionally reach overhead with the right dominant upper extremity; he should avoid concentrated exposure to hazards; and he is limited to simple repetitive tasks.

AR 14. The limitation of RFC to simple repetitive tasks is the only reference to plaintiff's mental functioning. By failing to include limitations to attention, concentration, pace and ability to attend a regular work schedule, the ALJ necessarily rejected Dr. Finkle's opinion regarding these impairments. Smolen v. Chater, 80 F.3d 1273, 1286 (9th Cir. 1996) (failing to discuss doctors' opinions and making contrary findings effectively rejects those opinions, constituting legal error). The rejection of an examining doctor's opinion must be for specific and legitimate reasons, supported by substantial evidence in the record. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996). Since the ALJ gave no reasons, the court cannot find that "specific and legitimate reasons" were provided for rejecting the doctor's opinion. This improper rejection constitutes error sufficient to warrant remand.

At the hearing, the ALJ asked the VE a hypothetical based on the RFC determination, without reference to Dr. Finkel's report or to any issues related to attention, concentration or

////

1    pace. AR 79-80.[5]  The VE was not asked whether a person with plaintiff's physical limitations,

2    capable of performing simple repetitive tasks, and with moderately impaired attention,

3    concentration and/or pace could perform plaintiff's past relevant work or other work.  Id.

4    Counsel for plaintiff did elicit testimony from the VE that an individual would not be able to

5    maintain employment in production or assembly work if he missed three or more days a month,

6    though an understanding employer might permit one or two absences a month.  AR 80-81.  No

7    witness or any other evidence, however, addressed the implications of Dr. Finkel's findings for

8    plaintiff's ability to work without missing more than one or two work days a month.  Because the

9    ALJ provided no basis for rejecting Dr. Finkel's findings of impaired attention, concentration,

10   pace and attendance, and because those findings were undisputed by any other medical source,

11   they should have been incorporated into the hypothetical.

12        Even a moderate limitation on an individual's ability to function cognitively or

13   psychologically in the workplace may undermine the ability to work.  Accordingly, the ALJ

14   should frame hypotheticals to the testifying VE to expressly include identified limitations on

15   attention, concentration, pace, and ability to complete a normal workday or work week.

16   O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010); Jelinek v. Astrue, 662 F.3d 805,

17   814 (7th Cir. 2011).  Here, the examining expert had assessed moderate impairments of attention,

18   concentration, pace, and ability to attend to a regular work schedule.  AR 499.  These limitations

19   were not incorporated into the hypotheticals.  Nor was the VE directed to Dr. Finkel's report and

20   instructed to credit it.  Rather, the ALJ presented a hypothetical based on her RFC determination,

21   which omitted reference to Dr. Finkel's moderate impairment findings.  Use of the phrase "simple

22   repetitive tasks" in the hypothetical does not suffice.  O'Connor-Spinner, 627 F.3d at 620; see

23   also Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996).  Accordingly, a remand is necessary.

24   ////

25   ─────────────

26   [5] "If you were to assume a hypothetical individual of the same age, education, work history as the claimant . . . is capable of medium [or light] work; no ladders, ropes or scaffolds, but may

27   occasionally climb ramps or stairs; occasional overhead reaching with the right [dominant] upper extremity . . . and avoid concentrated exposure to hazards; simple repetitive tasks.  Would that

28   hypothetical individual be capable of claimant's past work?"  AR 79.

## IV. CONCLUSION

The court finds that the ALJ's decision was not supported by substantial evidence. The ALJ failed to properly consider the medical evidence of record, which adversely impacted the questions posed to the VE. Thus, the matter must be remanded for further consideration so that the ALJ may properly consider the medical evidence in determining the RFC.

Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 14, is granted;

2. The Commissioner's cross-motion for summary judgment, ECF No. 16, is denied; and

3. This action is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: July 15, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE